UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 12-235-KSF

CONNIE J. THACKER                                                                            PLAINTIFF

v.                                             **OPINION & ORDER**

SCHNEIDER ELECTRIC USA, INC.                                            DEFENDANT

\* \* \* \* \* \* \* \* \* \*

In this civil action, the plaintiff, Connie J. Thacker, appeals two separate decisions made by the defendant, Schneider Electric USA, Inc. ("Schneider" or "the Company"), to deny Thacker's claims for disability retirement and disability life insurance benefits provided under employee benefit plans sponsored by Schneider.  In compliance with the Court's Scheduling Order of July 30, 2012, the parties have submitted their briefs regarding the applicable standard of review, and Thacker has filed her motion for judgment, which is fully briefed and ripe for review [DE #14].  Additionally, Thacker has filed a motion for leave to supplement the record with an affidavit, or in the alternative, for limited discovery [DE #15].  This motion is also ripe for review.

I.      **FACTUAL AND PROCEDURAL HISTORY**

The following facts are undisputed.  Thacker became employed at Schneider's Lexington, Kentucky plant on June 22, 1994.  As a union employee, Thacker was eligible to participate in a number of employee-sponsored benefit plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), including the Square D Company Coordinated Bargaining Employees' Pension Plan (the "Pension Plan") and the Group Life and Health Plan for Coordinated Bargaining

Employees (the "Life and Health Plan"). The Pension Plan is an "employee pension benefit plan" as defined by 29 U.S.C. § 1002(2) of ERISA [DE ##7-1 and 7-2]. The Life and Health Plan is an "employee welfare benefit plan" as defined in 29 U.S.C. § 1002(1) of ERISA [DE #7-3 and 7-4]. For both plans, Schneider or its predecessor Square D Company served as the "plan sponsor" pursuant to 29 U.S.C. § 1002(16)(B), and the plan administrator for both plans is an administrative committee appointed by Schneider.

On June 3, 2008, Thacker began a disability leave of absence from her employment and has not returned to work since that date. Thacker's life and health insurance benefits were terminated on June 15, 2009 due to her failure to pay premiums as required by the terms of the Life and Health Plan [DE #6-1, SE-000008]. On September 15, 2009, Thacker applied for Social Security disability benefits. By letter dated September 16, 2010, the Social Security Administration notified Thacker that she would receive disability benefits retroactive until June 2009 [DE #6-1, SE 000059, 000066]. Schneider received a copy of this letter on September 20, 2010 [DE #6-1, SE-00060-63].

On September 24, 2010, Thacker applied to Schneider for disability retirement and disability life insurance benefits [DE #6-1, SE-000059]. Her application for disability life insurance benefits was denied on October 19, 2010 by the administrative committee for the Life and Health Plan because she failed to submit proof of Total and Permanent Disability within one year of ceasing to be a covered individual. According to the administrative committee, Thacker ceased to be a covered individual when her term life insurance was terminated for non-payment of premiums effective June 15, 2009 [DE #6-1, SE-000022-23].

By letter dated November 11, 2010, the administrative committee notified Thacker that her claim for disability retirement benefits under the Pension Plan had also been denied for two reasons.

2

First, her claim was denied because the administrative committee determined that she failed to apply for disability retirement benefits within two years of her last day "actively at work at the Company" as required by the terms of the Pension Plan.  Second, her claim was denied because her Social Security benefits were not effective within six months after she stopped "actively working at the Company" as required by the terms of the Pension Plan [DE #6-1, SE000066-67].

Thacker appealed both decisions of the administrative committee to the Appeals Committee on January 4, 2012 [DE #6-1, SE-000038-39].  By letter dated February 2, 2012, the Appeals Committee notified Thacker that the denial of her claim for disability retirement benefits under the Pension Plan had been upheld for the reasons set forth in the original retirement benefits denial letter [DE #6-1, SE-000003-4].  Also by letter dated February 2, 2012, the Appeals Committee notified Thacker that the denial of her claim for disability life insurance benefits under the Life and Health Plan had been upheld for the reasons set forth in the original life insurance benefits denial letter [DE #6-1, SE-000003-4].

Thereafter, on June 29, 2012, Thacker filed her complaint in Fayette Circuit Court seeking reversal of the February 2, 2012 Appeals Committee decisions.  Schneider removed the case to this Court on July 23, 2012 on the basis of federal question jurisdiction under 28 U.S.C. § 1331 [DE #1].

## II.   THACKER'S MOTION TO SUBMIT AFFIDAVIT OR TO TAKE LIMITED DISCOVERY

The Court turns first to Thacker's motion to submit an affidavit or to allow limited discovery. Specifically, Thacker moves the Court to consider her affidavit relating to an alleged conversation she had with of Pam Macy, a Schneider employee in the Human Resources department, regarding

the deadline for filing her application for disability retirement benefits.  Alternatively, Thacker seeks

leave to conduct limited discovery on her conversation with Ms. Macy.

Thacker argues that the Court should consider this evidence outside of the administrative

record in conjunction with her argument that Schneider should be estopped from denying her

disability retirement benefits because she was advised by Macy that since she was an active

employee, she could not file for her disability pension.  Based on this advice, Thacker contends that

she delayed in filing her application for disability benefits.

It is well settled that a district court's review of a plan administrator's decision to deny

benefits in an ERISA action is confined to the administrative record that was before the plan

administrator.  *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998).  This

rule applies regardless of whether the standard of review at the district court level is *de novo* or

"arbitrary and capricious."  *Id*.  One of ERISA's primary goals is to provide a method to resolve

disputes over benefits inexpensively and expeditiously, and limiting the court's review to the

administrative record helps to accomplish this goal.  *Perry v. Simplicity Eng'g*, 900 F.2d 963, 967

(6th Cir. 1990).  "If district courts heard evidence not presented to plan administrators, employees

and their beneficiaries could receive less protection than Congress intended."  *Id*.

In limited circumstances, courts have allowed the plaintiff to obtain discovery, but only

where the plaintiff asserts a procedural challenge to the administrator's decision, such as a lack of

due process or an alleged bias on the part of the administrator.  *Wilkins*, 150 F.3d at 618, 619

(Gilman, J., concurring), *citing VanderKlok v. Provident Life and Accident Ins. Co.*, 956 F.2d 610,

617 (6th Cir. 1992). While Thacker attempts to couch her estoppel argument as a procedural

challenge, she is essentially seeking to develop facts that she could have and should have developed

4

in support of her administrative appeal.  As this court recognized in a factually similar case, the administrative process "provided an avenue for the plaintiff to present, document, and develop her estoppel claim [and therefore] discovery beyond the administrative record would be inappropriate." *Cramer v. Appalachian Regional Healthcare, Inc.*, 2012 WL 996583 at *11-12 (E.D. Ky March 23, 2012).  Thacker's failure to present this evidence during the administrative process prevents this Court from considering the affidavit or allowing additional discovery on this issue.

Additionally, Thacker contends that she is entitled to discovery outside the administrative record based on the presence of an August 31, 2009 letter she received from Schneider and attached as an exhibit to her motion [DE #15-2].  The letter informs Thacker of past-due premiums owed to continue her benefits under her Life and Health Plan.  However, as Schneider explains, this letter is not part of the administrative record because it was not reviewed or considered by the administrative committee or the Appeals Committee in determining the outcome of Thacker's claims.  The "administrative record" in an ERISA case includes all information considered by the plan administrator in evaluating the merits of the claimant's appeal. *Kalish v. Liberty Mutual/Liberty Life Assurance Co.*, 419 F.3d 501, 511 (6th Cir. 2005).  There is no indication that this letter was relied upon in making benefits determinations, and the fact that Thacker owed premiums to continue her health and life benefits and was in danger of having those benefits terminated was established by other documents that were submitted to and considered by the Appeals Committee [DE #6-1, SE-000008 (noting that Thacker ceased paying required premiums effective June 15, 2009); SE-000011 (Oct. 15, 2009 late notice advising Thacker that her benefits may be terminated effective June 15, 2009); SE-000013 (Nov. 18, 2009 letter advising Thacker of the termination of her health and life

benefits effective June 15, 2009)].  For all of these reasons, Thacker's motion for leave to submit her affidavit or for limited discovery will be denied.

## III.    STANDARD OF REVIEW

This is an ERISA action arising under 29 U.S.C. § 1132(a)(1)(B).  As an initial matter, this Court must determine the standard of review applicable to Schneider's decision to deny disability retirement and disability life insurance benefits to Thacker.  Schneider contends that the decision should be reviewed under the "arbitrary and capricious" standard and Thacker contends that the *de novo* standard of review is appropriate.

Generally, a *de novo* standard of review applies to decisions of plan administrators "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998).  When an ERISA plan confers discretion upon an administrator, the administrator's determinations must be reviewed under the "arbitrary and capricious" standard.  *Perez*, 150 F.3d at 555;  *Wendy's Int'l, Inc. v. Karsko*, 94 F.3d 1010, 1012 (6th Cir. 1996).

Turning first to the Pension Plan, the following language is relevant:

**Section 10.02 Responsibility and Authority of the Administrator**

The committee shall be the Administrator of the Plan for all purposes of ERISA and, subject to the provisions hereof and any agreement entered into pursuant to Section 9.04(a) hereof, shall have all authority necessary and appropriate to carry out its duties as such.  The duties and authority of the Administrator shall include, but shall not be limited to, the following:

(i)     The discretionary authority to make factual determinations and to interpret and apply the provisions of the Plan . . . .

6

[DE #7-1, SE-000280].  The Life Plan contains a similar delegation of discretionary authority to the plan administrator:

> Subject to the terms of any applicable collective bargaining obligation, the Committee as Plan Administrator shall have the sole authority in the exercise of its discretion to interpret, apply and administer the terms of the Plans and to determine eligibility for benefits and the amount of any benefits under the Plans, and its determination of such matters shall be final and binding, except to the extent such authority has been delegated to an insurance company or Appeals Committee. Benefits under the Plans will be paid only if the Plan Administrator, or an insurance company or Appeals Committee to whom authority has been delegated, decides in its discretion that the applicant is entitled to them.

[DE # 7-5, SE-000495].  Both plans clearly contain a delegation of discretionary authority to the relevant decision-maker to make initial eligibility determinations and to construe and interpret the terms of the employee plans as contemplated by *Firestone*.

While Thacker cannot point to any plan language which limits Schneider's discretion, she does argue that Schneider's role as both claims administrator and payor of benefits creates a conflict of interest that requires application of the *de novo* standard of review.  The Supreme Court disagreed in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 115-16 (2008), holding that the fact that an employer who administered an ERISA benefit plan and who both evaluated claims and paid for benefits is simply a factor to be considered in the analysis and does not alone change the standard of review.  As explained by the Sixth Circuit, such a conflict of interest does not require reviewing courts to abandon the "arbitrary and capricious" standard.  Rather, the "arbitrary and capricious" standard applies in spite of the conflict of interest, "but application of the standard should be shaped by circumstances of the inherent conflict of interest."  *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir. 1991).  Additionally, the Sixth Circuit has held that reviewing courts should not consider a conflict of interest unless the plaintiff provides significant evidence that the denial of a

7

claim was motivated by self-interest or bad faith. *Peruzzi v. Summa Medical Plan*, 137 F.3d 431, 433 (6th Cir. 1998).

In this case, Thacker has produced no evidence to suggest that Schneider's decision was in any way tainted by its role as both claims administrator and payor or that the claims administrators' actions were motivated by self-interest or bad faith. Accordingly, Thacker's bare conflict of interest allegation does not affect the Court's review of this case under the "arbitrary and capricious" standard of review.

Thacker also contends that the standard of review should be modified because the plan document differs from the plan summary as it relates to the specific definition of the phrase "actively working." As a result, Thacker contends that the proper standard of review as to the meaning of "actively working" should be *de novo*. However, while Thacker's argument may be relevant to the merits of this case, she has failed to point to any caselaw which requires the Court to disregard the "arbitrary and capricious" standard of review as to interpretation of plan documents. Accordingly, because the discretion exercised by these plans is clearly the type contemplated by the Supreme Court in *Firestone Tire* and *Glenn*, the Court will apply the arbitrary and capricious standard of review to this case.

Under this standard, a plan administrator's interpretation of the respective plan's provisions must be upheld if the interpretation is "reasonable." *Kovach v. Zurich Am. Ins. Co.*, 587 F.3d 323 (6th Cir .2009), *citing Morrison v. Marsh & McLennan Cos., Inc.*, 439 F.3d 295, 300 (6th Cir. 2006). "Review under the arbitrary and capricious standard is the least demanding form of judicial review of an administrative action; it requires only an explanation based on substantial evidence that results from a deliberate and principled reasoning process." *Morrison*, 439 F.3d at 300.

8

IV.     **ANALYSIS**

    A.     **DENIAL OF THACKER'S DISABILITY RETIREMENT BENEFITS**

Thacker first challenges the Appeals Committee's decision to deny her claim for disability retirement benefits under the terms of the Pension Plan. This claim was denied by Schneider for two independent reasons. The first stated reason was that Thacker failed to apply for disability retirement benefits within two (2) years after the date she was last "actively at work at the Company," as required by plan documents. Under the terms of the Pension Plan, "an application for disability retirement benefits must be filed with the Administrator within two years after the date the Participant is last actively at work at the Company as a condition to receiving disability retirement benefits." [DE #6-1, Pension Plan § 4.03, SE-000257]. The Summary Plan Description for the Pension Plan further states, "If you want to file a claim for Disability Retirement benefits, you must do so within 2 years after the date you are last actively at work at the Company." [DE #7-2, Pension Plan Summary Plan Description, SE-000325].

Thacker's medical leave of absence began on June 3, 2008. Although she submitted her application for disability retirement benefits more than two years later, on September 24, 2010, she claims that she remains "actively at work at the Company." The Appeals Committee disagreed, applying its discretion to construe the terms of the Pension Plan to mean that Thacker's last day "actively working at the Company" was June 2, 2008.

The second reason Thacker's application was denied was based on the effective date of her Social Security disability award. The Pension Plan contains clear terms regarding when a Social Security disability award may be used to support a claim for total and permanent disability:

> Effective for Participants whose last day actively working at the Company is on or after October 1, 1999, "Total and Permanent Disability" also means a disability for which the Participant has received a Social Security disability award under Title II of the Social Security Act; provided that the Social Security disability is incurred while the participant is in the Company's active employ; and further provided that the effective date of Social Security disability benefits must be a date within six (6) months after the date the Participant stops actively working at the Company, and the Participant must notify the Administrator within 60 days after the date the award was issued.

[DE #7-1, SE-000248-49].  The Summary Plan Description for the Pension Plan reiterates this requirement, stating:

> [I]f your last day actively working at the Company is on or after October 1, 1999 and you are awarded Social Security disability benefits for a disability you incur while an active eligible employee, you will also be considered Totally and Permanently Disabled.  The effective date of Social Security disability benefits must be within 6 months after the date you stop actively working at the Company, and you must notify Employee Direct within 60 days of the date of the award.

[DE7-2, SE-000326-327].  There is no dispute about the effective date of the Thacker's Social Security disability benefits - June, 2009, a full year after she began her leave of absence.  Because her Social Security benefits were not effective within six months of the date she stopped "actively working at the Company," the Appeals Committee determined that Thacker had not met the timing requirements of the Pension Plan and therefore denied her claim.

With respect to both reasons for the denial, Thacker contends that the Appeals Committee erroneously interpreted the meaning of "actively working at the Company."  Thus, the Court must now determine whether the Appeals Committee's interpretation of that phrase in the Pension Plan documents was reasonable.

Thacker argues that "actively working at the Company" should be interpreted to mean "employed by the Company, whether or not the employee is actually working any scheduled hours

10

or not." However, the Court cannot find any support for this argument. It is well established in the Sixth Circuit that ERISA plan provisions should be interpreted "according to their plain meaning, in an ordinary and popular sense." *Univ. Hosps. of Cleveland v. S. Lorain Merch. Ass'n Health & Welfare Benefit Plan & Trust*, 441 F.3d 430, 437 (6th Cir. 2006). There is no dispute that Thacker had not performed any of her job duties since June 2, 2008. It is not unreasonable for the Appeals Committee to conclude that an employee on medical leave who does not come to her place of work and is not performing any of her job duties is "actively working at the Company." To conclude any other way would be to ignore the plain and ordinary meaning of the phrase.

Moreover, the Appeals Committee's interpretation of the phrase "actively working at the Company" is supported by an overall reading of the Pension Plan's terms. If the term simply meant "employed by the Company, regardless of the circumstances," as Thacker argues, then that language could have been used in the relevant provisions. In fact, the term "employee" is specifically defined by the Pension Plan as "any hourly-paid person in the Company's employ" who is also in a particular collective-bargaining unit and on a seniority list for that unit. [DE #7-1, SE 000246]. The fact that the Pension Plan used the more restrictive phrase "actively working" supports the Appeals Committee's interpretation. Accordingly, the Court finds that the Appeals Committee's interpretation of "actively working at the Company" is not arbitrary and capricious, but rather is reasonable and consistent with the plain and ordinary meaning of the phrase.

Thacker makes an additional argument with respect to the denial based on the effective date of her Social Security award. While the Pension Plan uses the phrase "actively working at the Company" with respect to both the application deadline and the effective date of the Social Security award, Thacker contends that she relied on language in the Summary Plan Description stating:

11

> "Disability Retirement" is retirement if you become "totally and permanently disabled" while *actively employed* by the Company. . . .

[DE 7-2, SE-000316, emphasis added].  However, this provision is not relevant to the time for filing an application for disability retirement benefits.  The Appeals Committee determined that because Thacker had not performed any of her job duties since June 2, 2008, she was not "actively working at the Company" after that date.  It simply would not be reasonable for the Appeals Committee to look to the provision Thacker relies upon to determine the deadline for filing her application for disability retirement benefits.  Thus, for these reasons, the Court cannot find that the Appeals Committee acted arbitrarily or capriciously in determining that she failed to timely file her application.

## B.    DENIAL OF THACKER'S DISABILITY LIFE INSURANCE BENEFITS

Thacker also challenges the Appeals Committee's denial of her claim for disability life insurance benefits made available under the Life and Health Plan.  As an eligible Schneider employee on medical leave, Thacker was entitled to continued participation in the Life and Health Plan for at least 12 months after her leave of absence began, provided that she paid certain premiums necessary to continue coverage. [DE 6-1, SE 000008].  However, Thacker's benefits were ultimately terminated, retroactive to June 15, 2009, because she failed to pay the required premiums. [DE 6-1, SE-000011-13].

Nevertheless, on September 20, 2010, more than fifteen months after her medical and life insurance benefits had been terminated, Thacker submitted her Social Security disability award, which would have been considered proof of Total and Permanent Disability under the terms of the Life and Health Plan had it been timely submitted.  Her claim, however, was denied because she

12

failed to submit proof of Total and Permanent Disability within one year of ceasing to be a covered

individual as required by the terms of the plan.

The Life and Health Plan states as follows regarding eligibility for disability life insurance

benefits:

> If you become totally and permanently disabled, your Term Life Insurance will be
> paid to you when all of the following conditions are met:
> (a)      you are a covered individual, 59 years of age or younger;
> (b)      you furnish proof of Total and Permanent Disability within a year after ceasing to be
>          a covered individual;
> (c)      you were insured for at least the entire year preceding the onset of your Total and
>          Permanent Disability.

[DE 7-4, SE-000435].  There is no dispute that Thacker did not submit her Social Security award

letter until September 20, 2010.  However, she contends that she remained a "covered individual"

until November18, 2009, the date of the letter notifying her that her medical and life insurance

benefits had been terminated effective June 15, 2009, for two reasons.

First, Thacker argues that her life insurance benefits could not have been terminated before

November 18, 2009 because her COBRA papers were not sent to her until that time.  However,

COBRA is irrelevant to her life insurance benefits as COBRA does not provide continuation

coverage for life insurance.

Second, Thacker argues that her life insurance coverage did not terminate until she was

notified of her right to convert her term life insurance policy into an individual policy, which she

alleges did not occur until October 15, 2009.  This argument fails too.  The issue before the Appeals

Committee was the date on which Thacker ceased to be a "covered individual" under the terms of

the Life and Health Plan, not when she was notified of her right to convert her group life insurance

policy to an individual policy.  The Life and Health Plan specifically provides as follows:

13

> If your employment terminates or if you no longer meet eligibility requirements, you may convert your Term Life Insurance to an individual policy without proof of good health.  You must apply in writing and pay the premium within 31 days after your coverage ends or 15 days after you receive notices of the conversion privilege, whichever is later.  However, your Term Life Insurance terminates, regardless of when the written notice of the conversion privilege is received.

[DE 7-4, SE-000436].  The last sentence of this provision is clear: termination of coverage is in no way contingent upon when notice is received.

Thacker's coverage terminated based on her failure to pay required premiums, effective June 15, 2009.  The Appeals Committee's determination that her application failed to meet the deadline is not arbitrary or capricious, but rather reasonable under the terms of the Life and Health Plan.

## C.    ESTOPPEL

Alternatively, Thacker argues that Schneider should be estopped from denying her claims based on an alleged oral statement by Pam Macy, a Schneider human resources employee.  Thacker contends that Macy told her at some point that she would not be able to file her disability application because she was still considered an active employee.  Thacker further contends that she relied on this representation and would have timely filed her application but for this representation.

Thacker's estoppel argument fails as a matter of law.  The Sixth Circuit has traditionally refused to entertain estoppel arguments in ERISA benefit cases where a party asserting estoppel sought to apply the doctrine to alter the terms of unambiguous plan provisions.  *See Sprague v. General Motors Corp.*, 133 F.3d 388, 404 (6th Cir. 1998).  The *Sprague* court explained the reasons for this rule as follows:

> First, as we have seen, estoppel requires reasonable or justifiable reliance by the party asserting estoppel.  That party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available or furnished to the party.  Second, to allow estoppel to override

14

the clear terms of plan documents would be to enforce something other than the plan documents themselves.  That would not be consistent with ERISA.

*Id*.  In the limited cases where the Sixth Circuit has recognized estoppel claims in the ERISA context, courts have applied strict pleading and writing requirements.  For example, in *Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436 (6th Cir. 2010), the Sixth Circuit stated as follows:

> We hold that a plaintiff can invoke equitable estoppel in the case of unambiguous pension plan provisions where the plaintiff can demonstrate the traditional elements of estoppel, including that the defendant engaged in intended deception or such gross negligence as to amount to constructive fraud, plus (1) a written representation; (2) plan provisions which, although ambiguous, did not allow for individual calculation of benefits, and (3) extraordinary circumstances in which the balance of equities strongly favors the application of estoppel.

*Id*. at 444.  Here, Thacker's complaint and the facts in the record fall short of these standards.  First, and fatal to her claim, Thacker has not alleged that Macy ever made any written representations regarding the time in which she must apply for benefits.  Second, Thacker does not allege that Macy "engaged in intended deception or such gross negligence as to amount to constructive fraud," which is a necessary element to establish a claim for equitable estoppel in the ERISA context.  *See Cataldo v. United States Steel Corp.*, 676 F.3d 542, 553 (6th Cir. 2012)(affirming district court's dismissal of equitable estoppel claim against pension fund where plaintiffs failed to plead intent or gross negligence on the part of its representatives).  Thacker has not alleged that Macy's alleged representations were negligent, let alone grossly negligent or intended to deceive her into filing an untimely claim for benefits.  Finally, Thacker has not alleged or demonstrated that her reliance on Macy's alleged representations was justified under the circumstances.  Macy's alleged representation - that Thacker remained "actively at work with the Company" - is entirely inconsistent with the clear

and unambiguous terms of the Pension Plan.  For these reasons, Thacker's claim for estoppel fails as a matter of law.

V.      **CONCLUSION**

The Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1)     Thacker's motion to submit affidavit or to take limited discovery [DE #15] is **DENIED**; and

(2)     Thacker's motion for judgment [DE #14] is **DENIED**, and a judgment in favor of Schneider will be entered contemporaneously with this Opinion & Order.

This February 7, 2013.

**Signed By:**

_**Karl S. Forester**_   $KSF$

**United States Senior Judge**